```
              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEBRASKA
```

GEORGE KYROS,                        )
                                     )
            Plaintiff,               )         4:09CV3041
                                     )
      v.                             )
                                     )
NORTH AMERICAN BIOPRODUCTS           )         MEMORANDUM AND ORDER
CORPORATION,                         )
                                     )
            Defendant.               )
                                     )

The defendant has filed a motion to transfer venue. Filing No. 11. The defendant claims the majority of the party and non-party witnesses reside in or near Georgia, the majority of the alleged wrongful conduct at issue occurred in Georgia, and this case should therefore be transferred to the United States District Court for the Northern District of Georgia for the convenience of the parties and witnesses. For the reasons discussed below, defendant's motion is denied.

                        STATEMENT OF FACTS

The defendant is a small Georgia corporation that employs approximately twenty employees at its principal office located in Duluth, Georgia, a suburb of Atlanta. The plaintiff traveled from Nebraska to Georgia in March 2005 to interview for a position as a sales representative, and was offered the position on March 7, 2007. A written employment offer was drafted and executed by the defendant in Georgia on March 9, 2005. Filing No. 13-2, ¶¶ 3-7. The plaintiff accepted the offer.

The plaintiff's job duties for the defendant included maintaining existing accounts and generating business for the defendant in Kansas, Nebraska, portions of Missouri, Iowa, New

Mexico, Arizona, Texas, and Wyoming. In the course of performing these duties, the plaintiff contacted twenty-five businesses located in Nebraska alone. The defendant provided the plaintiff with a laptop computer, a cellular telephone, and access to the defendant's secure computer network based in Georgia. The plaintiff traveled to Georgia at least sixteen times to carry out his job responsibilities; representatives of the defendant traveled to Nebraska on at least three occasions to meet with the plaintiff. Plaintiff's pay was directly deposited by the defendant into the plaintiff's bank account located in Nebraska. Filing No. 13-2, ¶¶ 8-13; filing no. 15-2, ¶¶ 3-4, 8. The plaintiff reported to defendant's CEO, Kevin Dailey, in Georgia, and contacted the Georgia office several times a week by telephone and email for customer and technical support services, product samples, pricing and shipping schedules, and marketing materials. Filing No. 13-2, ¶¶ 14-15. The defendant's product literature is stored in Georgia, and all decisions related to the products are made in Georgia. Filing No. 13-2, ¶¶ 22-23.

The plaintiff worked out of his home in Papillion, Nebraska, where he kept defendant's proprietary and sales materials, and the laptop computer provided by the defendant. Filing No. 15-2, ¶ 6. The plaintiff ordered materials for customers online, and the orders were then shipped directly to the customer from defendant's warehouse in Madison, Wisconsin. Filing No. 15-2, ¶ 7. The plaintiff's direct supervisor from 2006 until plaintiff's employment was terminated was Christian Krupa, who is located in Ohio. Filing No. 13-3, ¶ 2; filing no. 15-2, ¶ 5.

The plaintiff signed a "Confidential Information, Inventions, and Non-Solicitation Agreement" while attending a sales meeting in Georgia in September 2007. In the Spring of

2008, the defendant directed sales representatives to sell a certain product at a certain price.  The plaintiff allegedly failed to follow this pricing directive, and independently offered a key customer a significantly lower and unacceptable price.  The plaintiff's sales territory experienced very low sales revenues, and the plaintiff allegedly undermined the defendant's management directive and authority during a sales meeting the defendant attended in Georgia in September 2008.  The plaintiff's employment was terminated by telephone in October 2008.  The plaintiff was located in Nebraska when he received this call.  Following the termination of his job, the plaintiff allegedly did not return his laptop computer until a month later.  He retained Pivotal Guidance Inc., a company in Omaha, Nebraska, to make two copies of the information located on the computer's hard drive before the computer was returned.  The defendant has allegedly refused to pay the plaintiff commissions plaintiff earned on a contract with Ag Processing, Inc, a business located in Omaha, Nebraska.  Filing No. 13-2, ¶¶ 16-21; filing no. 13-3, ¶¶ 4-8; filing no. 15-2, ¶¶ 9-11.

     The plaintiff filed his suit against the defendant in the District Court of Sarpy County, Nebraska on November 25, 2008.  The case was removed to this court on March 2, 2009.  The plaintiff alleges the "Confidential Information, Inventions, and Non-Solicitation Agreement" is unenforceable, plaintiff's employment termination violated Nebraska public policy, and the defendant has violated plaintiff's rights under the Nebraska Wage Payment and Collection Act and the Nebraska Fair Employment Practices Act.  Filing No. 1-2, ¶¶ 14-34.  The defendant's answer and counterclaim alleges the plaintiff breached his contract with the defendant, misappropriated trade secrets in violation of both Nebraska and Georgia law, and violated the Computer Fraud and

3

Abuse Act, 18 U.S.C. §§ 1030(a)(4) and (5) et seq., and the Georgia Computer Systems Protection Act.  Filing No. 6.

The defendant's critical and non-party witnesses include five of its employees located in Georgia, (Kevin Dailey, Dave McKinney, Sanjoy Ganguly, Jaime Carreno, Kevin Kauers), and five additional employees located in Tennessee, Ohio, Wisconsin, Kentucky, and Minnesota.  Filing No. 13-2, ¶ 24.  The plaintiff's witnesses include the plaintiff, who remains living in Nebraska and now earns only $8.25 per hour, and Jonathan P. Rowe, a Nebraska resident who secured the forensic copies of the laptop computer's contents.  Filing No. 15-2, ¶ 11.

Comparing the statistics of the United States District Courts for Nebraska and the Northern District of Georgia:

- Nebraska district judges have an average caseload per judge of 531 cases (250 civil; 204 felony; 77 supervised release hearings), compared to an average caseload per judge of 480 cases (420 civil; 44 felony; 16 supervised release hearings) in the Northern District of Georgia;

- The median time for a civil case to proceed from filing to disposition in the Northern District of Georgia is 6.7 months, compared to 9.1 months in Nebraska. However, the median time for a civil case to proceed from filing to trial in Nebraska is 20 months, compared to 30.5 months in the Northern District of Georgia;

- Nebraska has a lower percentage of civil cases pending more than three years.

Filing No. 13-4.

4

LEGAL ANALYSIS

Provided plaintiff's action could have been brought, in the first instance, in the United States District Court for the Northern District of Georgia, this court has discretion to transfer the case to that forum for the convenience of the parties and witnesses.  See 28 U.S.C. § 1404(a).  The court specifically finds that based on the evidence of record, this case could have been filed in a Georgia forum.  The plaintiff has not argued to the contrary.

The court must therefore perform an individualized analysis of case-specific factors to determine whether the defendant's requested transfer to the Georgia federal court will advance the convenience and fairness of these proceedings.  Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).  The court must consider "the convenience of the parties, the convenience of the witnesses, the interests of justice, and any other relevant factors when comparing alternative venues."  Terra Intern., Inc. v. Mississippi Chemical Corp., 119 F.3d 688, 696 (8th Cir. 1997)(citing 28 U.S.C. § 1404(a)).  Factors to consider include the willingness of witnesses to appear, the ability to subpoena witnesses, the adequacy of deposition testimony, the accessibility to records and documents, the location where the conduct complained of occurred, and the applicability of each forum state's substantive law.  Id. (citing Terra Intern., Inc. v. Mississippi Chemical Corp., 922 F. Supp. 1334, 1359 (N.D. Iowa 1996)).  The court should also consider such factors as judicial economy, the plaintiff's choice of forum, the comparative costs to the parties of litigating in each forum, each party's ability to enforce a judgment, obstacles to a fair trial, conflict of law issues, and the advantages of having a local court determine

questions of local law.  Id. (citing Terra Intern., 922 F. Supp. at 1361-63).

The defendant argues that several of its witnesses are located in Georgia, and these witnesses, along with the defendant, will be burdened by litigating in Nebraska.  However, the plaintiff is located in Nebraska, the person who downloaded the laptop files is located in Nebraska, and the client for which commissions have not allegedly been paid to the plaintiff is located in Nebraska.  Although the defendant has identified more witnesses in Georgia than the plaintiff has identified in Nebraska, "sheer numbers of witnesses will not decide which way the convenience factor tips," (id. (citing Terra Intern., 922 F. Supp. at 1360)), and if the case is transferred, the plaintiff will be similarly inconvenienced.  "Merely shifting the inconvenience from one side to the other" does not justify a change of venue.  Id.

Moreover, in addition to the witnesses in Georgia, the defendant has identified key witnesses located in Ohio, Tennessee, Minnesota, Wisconsin, and Kentucky.  All of these non-Georgia witnesses will likely use an airline for transportation to the place of trial, irrespective of whether the trial is held in Lincoln or Atlanta.  As for the defense witnesses located in Minnesota and Wisconsin, these witnesses are actually closer to Lincoln, Nebraska than Atlanta, Georgia.

The witnesses identified by the defendant are employees of the defendant.  It is unlikely they will need to be subpoenaed to secure their attendance on behalf of the defendant at trial.  While the records and documents at issue may be physically located in Georgia, the evidence indicates defendant's sales

representatives accessed these documents online. There is nothing of record indicating the paper version of any document is essential to this case or that, even if some such documents are needed, the volume of necessary paper documents supports transferring the case to Georgia.

Based on the evidence before the court, it appears the alleged misconduct by the plaintiff (misappropriation of defendant's property and computer files) occurred primarily in Nebraska, and the alleged misconduct of the defendant (the alleged unlawful termination of plaintiff's employment and failure to pay wages or commissions earned) occurred in Nebraska. The plaintiff has filed claims under Nebraska law; the defendant has filed claims under federal, Georgia, and Nebraska law. To the extent Georgia law governs a claim, this court is capable of researching and interpreting that law.

"[T]rial courts must give deference to a plaintiff's forum choice." Reid-Walen v. Hansen, 933 F.2d 1390, 1395 (8th Cir. 1991)(citing Koster v. (American) Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947)). The plaintiff chose to file suit in Nebraska.

> Where there are only two parties to a dispute, there is good reason why it should be tried in the plaintiff's home forum if that has been his choice. He should not be deprived of the presumed advantages of his home jurisdiction except upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems.

Koster, 330 U.S. at 524.

Litigation in this forum will not be oppressive or vexatious to the defendant. Electronic filing is the rule, not the exception, in the United States District Court for the District of Nebraska, and such filings can be made as easily and inexpensively from Atlanta as they can from Lincoln. As for the cost of trial attendance, these costs will be incurred irrespective of where the trial is held. Changing the trial location to Atlanta serves only to impose the cost on the plaintiff rather than the defendant. A judgment rendered in favor of either party can be enforced in this forum. The parties have not addressed, and the court is not aware of any conflict of law issues that will likely arise and/or cannot be addressed adequately in this forum.

Although the plaintiff argues the caseload in this forum justifies transfer to the federal court in Atlanta, the statistics could also be interpreted as favoring a Nebraska forum for disposition of the plaintiff's case. For example, based on statistics alone, if this case is disposed of by trial, the trial will occur nearly a year earlier in a Nebraska federal court than in an Atlanta federal court. If the case can be disposed of without a trial, the defendant's conduct will determine how quickly that occurs and, with electronic filing, any additional burden of filing dispositive motions in a Nebraska, rather than a Georgia federal forum is negligible.

Having considered the specific facts of record, the court finds that transferring this case to the United States District Court for the Northern District of Georgia will not serve the interests of justice or the convenience and fairness of these proceedings. The defendant's motion to transfer should be denied.

IT THEREFORE HEREBY IS ORDERED:  The defendant's motion to transfer venue, (filing no. 11), is denied.

DATED this 28th day of April, 2009.

BY THE COURT:

s/ *David L. Piester*
David L. Piester
United States Magistrate Judge